# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:11-CR-39-TLS |
| | ) | |
| TRENT D. MOORE | ) | |

## OPINION AND ORDER

The Defendant, Trent D. Moore, pled guilty [ECF No. 64] to two counts of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1). An officer with the United States Probation Office prepared a Presentence Investigation Report (PSR) [ECF No. 69] in anticipation of the Defendant's sentencing, which was finalized on April 8, 2013 [ECF No. 73]. The Defendant filed two objections to the PSR, which are reflected in the addendum to the PSR [ECF No. 74]. First, the Defendant objects to the base offense level calculation based on his allegation that the government engaged in sentencing entrapment when the confidential informant in the case allegedly convinced the Defendant to cook powder cocaine into crack cocaine. As an additional ground in support of his first objection, the Defendant argues that the disparity in sentencing between convictions for powder cocaine versus crack cocaine are unfair and unjust. The Defendant's second objection to the PSR involves his criminal history computation. Specifically, the Defendant argues that his earlier conviction for home invasion was "minor" and the classification as a career offender "drastically over emphasizes his criminal history resulting in a much harsher guideline recommendation than is appropriate." Addendum 2 [ECF No. 74].

The parties filed initial sentencing memoranda [ECF Nos. 87 & 88] and the Court then issued an Order [ECF No. 89] requesting additional briefing on the issue of sentencing

entrapment. Prior to that additional briefing, the Defendant requested an evidentiary hearing on the issues related to his objections to the PSR. That hearing was held on October 10, 2013, and thereafter the parties filed their supplemental briefs on the issue of sentencing entrapment [ECF Nos. 109 & 114]. For the reasons stated below, the Defendant's objections to the PSR are overruled.

## ANALYSIS

### A. Sentencing Entrapment and Sentencing Disparity

The Seventh Circuit recognizes the doctrine of sentencing entrapment. To succeed on a sentencing entrapment claim, a defendant must show: "(1) that he lacked a predisposition to commit the crime, and (2) that his will was overcome by 'unrelenting government persistence.'" *United States v. Turner*, 569 F.3d 637, 641 (7th Cir. 2009) (quoting *United States v. Gutierrez-Herrera*, 293 F.3d 373, 377 (7th Cir. 2002)). Further, "[t]he government may rebut such claims by demonstrating that the defendant was predisposed to violate the law without extraordinary inducements." *Id.* (quotation marks omitted). As the Government noted in its response to the Defendant's objections to the PSR, when determining a defendant's predisposition to commit a crime, a court can consider evidence that the defendant was involved in drug trafficking before or after the offense of conviction. *See United States v. Bastanipour*, 41 F.3d 1178, 1183 (7th Cir. 1994) (evidence of prior narcotics conviction relevant to rebut entrapment defense in a prosecution for possession of heroin). Finally, a sentencing entrapment claim may alter the offense level under the career offender Guideline. *See United States v. Knox*, 573 F.3d 441, 451

(7th Cir. 2009) (court could consider a sentencing entrapment claim on its merits where the defendant argued the Government's sentencing entrapment led him to commit an offense that triggered the career offender Guideline instead of an offense that would not have qualified him as a career offender); *but see United States v. Bew*, 98 F. App'x 554, 556 (7th Cir. 2004) (finding defendant's sentencing entrapment argument frivolous because even if true it would not have changed the defendant's Guidelines range under the career offender Guideline).

Following the evidentiary hearing, counsel for the Defendant filed a Supplemental Sentencing Memorandum [ECF No. 109]. The Defendant argues that the testimony offered at the evidentiary hearing "could be interpreted to indicate" that the Defendant did not know how to make crack cocaine until his first transaction with the Confidential Informant (CI). (Def.'s Supplemental Sentencing Mem. 1, ECF No. 109.) The evidentiary hearing held on October 10, 2013, involved testimony from Task Force Officer Chad Wagner ("Wagner"). The only evidence the Defendant offers in support of this argument is that during the first controlled buy between the Defendant and the CI on February 10, 2010, the CI called Wagner and stated "nobody at Thoroughbred knows how to cook crack." *Id.* at 2 (citing Tr. 27.) During this time the Defendant and another individual were inside an apartment at 7517 Thoroughbred. This is the only support offered to show that the Defendant lacked the predisposition to cook powder cocaine into crack. And the Defendant did not offer an interpretation of this statement.

The transcript of the evidentiary hearing casts doubt on the significance of the one piece of evidence the Defendant offers. Wagner testified that 7517 Thoroughbred in Fort Wayne is an apartment that was home to Jarvis Buchanan. (Tr. 26.) Wagner also testified that there was also ongoing surveillance at 9706 Aboite Center Road in Fort Wayne, which was the residence of

Jerico Jackson and the Defendant, Trent Moore. (Tr. 26–27.) This makes it clear that the Defendant did not live at 7517 Thoroughbred. While the Defendant was inside the 7517 Thoroughbred apartment when the CI told Wagner that "nobody at Thoroughbred knows how to cook crack," it is not evident that this statement applied to the Defendant. The Defendant was inside at the time of the CI's call, but did not live there. The CI's statement does not clearly apply to the Defendant. In fact, it is just as likely, if not more likely, that the statement applies to the individuals who actually lived at the 7517 Thoroughbred apartment. Without any additional explanation this statement alone does not show that the Defendant lacked the predisposition to cook powder cocaine into crack. Furthermore, the rest of the evidence presented at the evidentiary hearing provides a strong showing that in fact the Defendant knew a great deal about cooking powder cocaine into crack and strongly suggests that he had done so before.

      Task Force Officer Wagner also testified that he listened to and watched recordings of the Defendant and other individuals involved in narcotics activity and discussions on February 25, 2010, and June 17, 2010. Specifically, Wagner testified that it was the Defendant, Trent Moore, who asked other individuals on February 25, 2010, whether they wanted some cocaine "heated." (Tr. 10.) He testified that "heated" means to cook powder cocaine into crack cocaine. (*Id.*) On that same recording, Wagner testified that Moore also told those same individuals that he did not have much baking soda left. (Tr. 11.) He also testified that baking soda is commonly used in converting powder cocaine into crack cocaine. (Tr. 12.) Wagner testified that on two different recordings, a male voice discussed prior times that he cooked powder cocaine into crack. (Tr. 16, 21.) Wagner further testified that the male voice on those two recordings was that of the Defendant, Trent Moore. (*Id.*)

The Defendant only offered one piece of evidence in support of his argument that he lacked the predisposition to cook powder cocaine into crack cocaine. That one piece of evidence is not persuasive and the rest of the evidence presented at the evidentiary hearing demonstrates that the Defendant had previous experience cooking powder cocaine into crack cocaine. Therefore, the Defendant's argument that he lacked a predisposition to commit the crime fails and the objection to the PSR on this ground is overruled.

The Defendant also argues that his will was overcome by the Government's use of the Defendant's family member as a CI. The Defendant testified that the CI was a family member he had known for approximately ten years and that the CI insisted that the Defendant cook the powder cocaine into crack. (Def.'s Supplemental Sentencing Mem. 2, ECF No. 109 (citing Tr. 29, 31–32.)) Without any additional evidence, the argument that the Defendant's will was overcome by government persistence is unpersuasive. The Defendant's objection on this ground is also overruled.

Finally, the Defendant argues that his base offense level is highly inflated "due to the unwarranted discrepancy that exists between powder and crack cocaine in the drug equivalency tables," but does not offer any arguments in support other than basic unfairness. (Def. Sentencing Mem. 2, ECF No. 87.) The disparity between the crack and powder cocaine was addressed in the Fair Sentencing Act of 2010 and the probation officer used the applicable conversion rates when calculating the Defendant's base offense level. Therefore, the Court overrules the Defendant's objection on the basis of unfairness in the conversion rates between crack cocaine and powder cocaine.

**B.     Career Offender Status**

The Defendant argued in his original Sentencing Memorandum [ECF No. 87] that the probation officer's calculation of the total offense level was inflated by giving too much weight to previous convictions. Notably though, the Defendant also states that "[t]echnically, the career offender status is correctly applied." Def.'s Sentencing Mem. 2, ECF No. 87.) The Defendant specifically points to a residential entry conviction from 2006 that is considered a minor crime of violence and argues that the crime was relatively minor and thus should not impact the calculation as much as it did. *Id.* The Government points out that this conviction involved the Defendant breaking into and entering the home of the mother of one of his children on the same day he had been served a protective order ordering him to stay away from that individual. Government's Sentencing Mem. 2, ECF No. 88.). The Government also explains that the Court records show that on that occasion the Defendant kicked in the woman's door, which knocked her into a closet. *Id.* The door then slammed against her causing pain. *Id.* The Court Records also state that the Defendant threatened to kill her and then himself before grabbing her purse and fleeing. *Id.*

Taking all this information into consideration and noting that the Defendant concedes that the application of career offender status was "correctly applied," the Court overrules the Defendant's objection to the application of career offender status in the calculation of the base offense level.

**CONCLUSION**

The Defendant's arguments on sentencing entrapment, disparity in sentencing, and the

application of career offender status are unpersuasive. Therefore, the Court OVERRULES the Defendant's objections to the calculation of his base offense level and the computation of his criminal history category.

SO ORDERED on April 4, 2014.

s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT